## The People on the relation of William H. Chapman v. The Commissioner of the State Land Office.

*Commissioner of the land office: Primary school lands: Mandamus.* Where a lot belonging to the primary school lands has been deeded in December, 1850, and has consequently ever since been treated as out of the market, the commissioner of the land office will not be compelled by *mandamus*, upon a showing that such deed is void, and that there is no such society in existence as that named as grantee therein to sell the same now, at the price of an appraisal made July 1, 1850.

CHAPMAN *v.* COMMISSIONER OF STATE LAND OFFICE.

*Statute construed.* The commissioner was authorized, in such a case, if not required, to refuse to make such sale, by the statute (*Comp. L. 1857*, § *2458*) providing that he may, in his discretion, reserve and withhold from sale such portions of said lands " as in his opinion it may not be advantageous to sell and dispose of, and for so long a time as in his opinion will be beneficial to the several funds affected thereby."

*Mandamus: Petition: Demurrer: Admissions.* Where the petition for *mandamus* in such case alleges that the lot in question was subject to entry at a sum specified, on July 1, 1850, a demurrer thereto does not admit, in the absence of any allegation to that effect in the petition, that it was subject to such entry on December 28, 1850, or at any time subsequent to July 1, 1850.

*Mandamus: Petition: Allegations.* An allegation in such petition that when the relator applied to purchase the lot on January 28, 1872, the commissioner assigned as the reason of his refusal, the deed above mentioned, is not equivalent to an allegation that the lot was in fact, but for the deed, subject to sale, or that it was subject to sale at the appraisal at the time of the execution of the deed; his omission to assign any other reason is, but circumstantial evidence.

*Corporation: Mandamus: Admissions.* The existence of a corporation capable of taking as grantee in said deed, if denied, would not be tried upon this application for *mandamus;* and no admission by the respondent of its non-existence could bind any society, if any did exist, claiming to be the corporation named in the deed.

*Heard October 29. Decided November 7.*

Application for *mandamus.*

*Theodore Romeyn,* for the relator.

*Dwight May, Attorney General,* for the respondent.

CHRISTIANCY, CH. J.

This is a petition for an order of this court requiring the commissioner of the state land office to show cause why a *mandamus* should not be issued commanding him to issue to the petitioner a full-paid certificate of purchase for lot number seven, block number ninety-six, in the city of Lansing.

The petition (omitting the prayer above stated) is in the following words:

" Your petitioner, William H. Chapman, of Lansing, Ingham county, Michigan, respectfully represents that, on the first day of July, 1850, the state of Michigan was the owner of a certain piece or parcel of land, lying and being

in said city of Lansing, and known and described as lot number seven, block number ninety-six, according to the recorded plot of the town of Michigan, now the city of Lansing; that said lot is upon section sixteen, in the township of Lansing, and is a portion of the lands granted to the state of Michigan by the United States for the use of schools, and known as primary school lands; that prior to said first day of July, 1850, said lot had been duly appraised, and offered for sale at public auction, and was at that time subject to entry at the state land office at the sum of two hundred and ninety-two dollars, its appraised valuation.

"Your petitioner further represents that, on the 23d day of December, 1850, as appears from the records of the state land office, a deed was executed by the auditor general, state treasurer, and secretary of state, under the provisions of *act numbered 231, laws of 1848*, and *act numbered 337, laws of 1850*, purporting to convey said lot to The Central Presbyterian Society of the city of Lansing, for the sum of five dollars.

"And your petitioner represents that he is advised and believes, that the statutes before referred to, and all action taken by the state authorities in attempting to convey the lot in question to said Central Presbyterian Society for this nominal consideration, was, and is, wholly unconstitutional and void.

"And your petitioner further represents, on information and belief, that there was not at that time, nor has there at any time since been, any organization of professing Christians known as The Central Presbyterian Society in said city of Lansing.

"And he further represents that no steps to take possession of said lot so conveyed were ever taken by the said Central Presbyterian Society, or by any persons claim-

ing under them; but that said lot was at that time, and ever since has been, unenclosed, vacant and unoccupied, up to the time of the application made by your petitioner to purchase the same, as hereinafter set forth.

"Your petitioner further represents that on the 23d day of January, 1872, he applied at the state land office, through his attorney, S. F. Seager, Esq., of Lansing, Michigan, to purchase said lot, and tendered the purchase price thereof, as appraised, to wit, the sum of two hundred and ninety-two dollars, and that his application was refused by the commissioner of the state land office, who assigned, as the reason of such refusal, the deed hereinbefore mentioned."

To this petition the attorney general, on behalf of the commissioner, orally demurs, thereby admitting, so far as it was competent for the commissioner to admit, all the facts of the petition well pleaded.

The validity of the conveyance of the 23d of December, 1850, purporting to have been made by the auditor general, state treasurer and secretary of state, to "The Central Presbyterian Society of the city of Lansing," under the acts of 1848 and 1850, is disputed by the relator; and the conveyance claimed to be void, on several grounds; and being, as he claims, utterly void, he insists that he has a right to purchase the lot at its appraisal, made prior to July, 1850.

The petition alleges that said lot was, on the first day of July, 1850, subject to entry at the state land office (at the sum of two hundred and ninety-two dollars), and this fact is admitted by the demurrer.  But there is no allegation that it was subject to such entry at the time the conveyance referred to was executed, December 23d, 1850, or at any time after the first day of July, 1850; and the demurrer, consequently, can hardly be said to admit that it was.

It is true, it alleges that, when petitioner applied to

purchase the lot, on the 23d of January, 1872, the commissioner assigned, as the reason of his refusal of the application, "the deed hereinbefore mentioned." This is hardly equivalent to an allegation that the lot was, in fact (but for the deed), subject to sale; or that it was subject to sale at the appraised value at and immediately prior to the execution of the deed, or at any time after July 1st, 1850; as the commissioner might have put his refusal on the ground of this deed, though the lot might have been re-appraised at a much higher sum between the 1st day of July and the 23d day of December.—See *Rev. Stat. of 1846, ch. 60, § 14.* And though the commissioner may have assigned but one reason, the existence of the deed, yet, if the lands were not, in fact, subject to sale on the 23d day of December, 1850, at the price named, he could not, even on the relator's own theory, be compelled by *mandamus* to sell it for that sum. His omission to mention any other reason than the deed for his refusal, is but circumstantial evidence, that the lands, but for the deed, were subject to entry. And the allegation of this circumstantial evidence of the fact, can hardly be held equivalent to, or to dispense with, an allegation of the fact itself.

So far as the petitioner's right to purchase depends upon the alleged fact that there was not, at the time, or at any time since, any such organization (or corporation, for such is the effect of the allegation) as that named as grantee in the deed, the petition raises a question which, if the fact were denied, could not be tried upon an application for a *mandamus,* but only in a proceeding on behalf of the state, by *quo warranto* or otherwise; and no admission by the commissioner, or the attorney general, of the non-existence of the corporation, could bind such corporation, if one should happen to exist, or any society claiming to be the corporation named in the conveyance. In view of

the duties imposed upon the auditor general, state treasurer, and secretary of state, by the acts of 1848, and 1850, it is but fair to present that some persons claiming to be, or to represent, such a society, as a then existing corporation, must have made application for this lot before the execution by them of the conveyance; as the officers named, could not, under those acts, otherwise have executed it, in good faith.

And after the execution of the deed, we think it exceedingly questionable, though we do not decide, whether any individual seeking to purchase the lot, is competent to raise the question of its validity in a proceeding of this kind. It would seem to be a case much more proper for some action to be taken in behalf of the state, either by the legislature, or some other department of the state government.

But we do not rest our decision in this case, upon any of the grounds above suggested, nor do we deem it necessary to determine the questions raised and elaborately argued by the counsel for the relator, whether, *first*, the conveyance of the lot in question, even admitting the existence of a competent grantee, comes within the intention of the acts under which it purports to have been made, or whether, if it does, the acts or the grant under them, would be unconstitutional and void.

We place our decision upon a broader ground, and hold, that, though the conveyance in question may have been wholly void, and the title of the lot still in the state at the time the petitioner applied for its purchase, this court ought not, by *mandamus*, to compel the sale of the lot to the petitioner, in accordance with the prayer of his petition.

The town of Michigan, now the city of Lansing, was platted while the land was still a wilderness. The state capital was established there in the year 1847. *When* the

appraisal of this lot was made, we are not informed by the petition, except that it was prior to the first day of July, 1850. We cannot shut our eyes to the fact, which is notorious, that at that time, most of what now constitutes the city of Lansing, was still a wilderness; and that in the ordinary course of things, and the progress of settlement and improvement, not only in, but around, the town, the lots must, in all probability, have greatly increased in value since July 1st, 1850.

Giving to the petition the most favorable construction to the petitioner which it will bear, this lot has been kept out of market from the 23d day of December, 1850, in consequence of this deed, and treated at the land office as sold, and no longer open to sale.

Now, the manifest purpose of the legislature in requiring an appraisal of such lots, when they exceed in value the minimum price of ordinary school land, in authorizing new appraisals to be made, fixing the minimum price at such appraisals, and in requiring all school lands to be first offered at public sale before allowing them to be sold at private sale, as well as in allowing the commissioner to withhold from sale such portions of school land as, in his opinion, it may not be advantageous to dispose of, for so long a time as, in his opinion, will be most beneficial to the school fund, was, *first,* to secure to the state, as near as possible, what the lands were really worth, and to prevent their sale at a price greatly below what might be obtained for them; and *second,* to secure to all persons who might be disposed to purchase, equal opportunities to make such purchases, without partiality or favoritism.—See *Rev. Statutes of 1846, ch. 60,* §§ *1, 12, 13, 14, and 15; Comp. Laws, 1857,* §§ *2444, 2455, 2456, 2457, and 2458.*

Now, these purposes, constituting the main and primary objects of the statutes cited, would be clearly and effectually

defeated, if, after this lot had been thus kept out of market for nearly twenty-two years, during which it must, in all probability, have largely increased in value, the relator, or any other person, could, for the purpose of making a speculation, without danger of competition, compel the commissioner to sell him the lot at its original appraised value.

To construe the statutes as giving him that right, and compelling the commissioner to sacrifice the public interest, which the statute was enacted to secure, would be to make the letter of these statutes (if such is their letter) defeat the plain and primary objects of the legislature in enacting them; it would be to sacrifice the advantages which the statutes were intended to secure, and to make the statutes themselves the sanction of the very evils they were intended to avoid.

But we think the commissioner was authorized, if not required, by the express provisions of *section 2458, Comp. Laws of 1857*, to refuse to sell these lands to the petitioner, at the time he applied for them; since he must have seen that, under the circumstances, it was not for the public interest that they should be thus sold; and, so far from seeing any reason to complain of the action of the commissioner in refusing the application of the relator, we think he would have been guilty of a clear violation of official duty, had he accepted the offer and undertaken to make the sale.

Lands so situated, or so long kept out of market, though by mere accident or mistake, and when there is no doubt that the title remains in the state, should not be sold at all, without an appraisal and offering at public sale.

The application for a *mandamus* must be denied, with costs against the relator.

The other Justices concurred.